AMERICAN CREDIT INDEMNITY CO. v. CHAMPION COATED PAPER CO.

(Circuit Court of Appeals, Sixth Circuit. July 13, 1900.)

No. 763.

**1.** INSURANCE—INDEMNITY AGAINST LOSS BY INSOLVENT DEBTORS—CONSTRUCTION OF BONDS.

Two bonds of indemnity against loss by the insolvency of debtors were issued to a mercantile company, the second being a renewal of the first. They contained identical provisions to the effect that any loss covered by the terms of such bond, and resulting from sales and shipments made during its term, but which should not become provable, under its conditions, before its expiration, might be proved under a renewal thereof "under and subject also to the terms and conditions of such renewal"; and also that, in case such bond was a renewal, losses accruing during its term on sales and shipments made during the term of the preceding bond might be proved thereunder, "subject, also, to the terms, conditions, and limitations of said preceding bond." *Held*, that under such provisions one evident purpose of a renewal was to extend the protection of the preceding bond to losses on sales during its period which did not technically become provable before its expiration, and hence that such losses arising from sales and shipments made during the term of the first bond and proved during the term of the second were governed by the terms and conditions of the original bond, rather than those of the renewal, as to matters in which the two differed.[1]

**2.** SAME—INITIAL LOSS TO BE BORNE BY INSURED.

A bond of indemnity guarantied the insured against loss not exceeding $20,000, resulting from the insolvency of debtors "over and above the loss of $2,000, agreed first to be borne by the said indemnified." It contained further provisions that "the claims provable under this bond include only the amount to be first borne by the indemnified and the amount of this bond," and that "no amount against any one such insolvent debtor shall be covered for more than $10,000." *Held*, that under such provisions the initial loss to be borne by the insured must be deducted from the amount of "covered" or "provable" loss, which would require the aggregate amount

---

[1] Credit insurance, see notes to Indemnity Co. v. Wood, 19 C. C. A. 271, and American Credit Indemnity Co. v. Athens Woolen Mills, 34 C. C. A. 165.

of such covered loss to be $22,000 to authorize a recovery of the full amount of the bond.

**3. SAME—APPLICATION OF PAYMENTS.**

Under a provision of a bond of indemnity against loss by the insolvency of debtors that "when the amount of a claim against any debtor at the time of insolvency exceeds the amount covered by this bond all amounts realized or secured therefrom shall be deducted pro rata," the insurer is entitled to have credited an amount paid the insured by a third person in settlement of a suit brought to charge him with liability for the debt as a partner as an amount realized upon the claim.

**4. SAME—PAYMENT OF PREMIUM.**

An insured in an indemnity bond gave a short note for a renewal premium, which was paid by a check payable to the insurer, which cashed the check and retained the money. A renewal policy was issued, reciting the receipt of the premium, and in an action on the two bonds the answer admitted the execution of the second bond. *Held*, that under such circumstances the defendant could not deny to the second bond the same effect as though the premium had been paid in cash at the time the note was given.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Jacob Shroder, for plaintiff.

C. Bentley Matthews, for defendant.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This was an action in contract upon two bonds of indemnity against loss by insolvent debtors. The first bond was in effect from December 1, 1895, to November 30, 1896. The second was in effect for one year after expiration of the first, and is a renewal of the first, and differs only in respect to the amount of the initial loss to be borne by the insured, and in the limitation of liability by a loss by a single debtor. Each bond guaranties the insured against loss to the extent of $20,000 by insolvency of debtors as therein defined, over and above the initial loss to be first borne by the insured upon sale and shipments of merchandise during the period of the bond. Each bond contains a provision requiring notification of claims "on the blanks furnished and in the manner prescribed by it" within 20 days after the indemnified receives information of the insolvency, and that such notice "must be received at the central office of the company at St. Louis, Mo., during the term of this bond; otherwise such claim shall be barred." The claims to be thus proven, within the terms of the bond, are claims for losses, within the meaning of the contract, and are such as are occasioned by insolvency of debtors, as defined by the eleventh condition of the policy.

1. The plaintiff below proved two losses, based on sales and shipments made during the period of the original bond, but the losses, in the sense of insolvency as defined by the contract, did not result until after the expiration of the first bond and during the period of the second or renewal bond. The first claim is for $1,533.34, lost upon sales to the Louis Snider Paper Company. That company's affairs went into the hands of a receiver July 29, 1896. The fact was notified to the credit company August 1, 1896, but, under condition 11, there

was no provable loss until the plaintiff could and did furnish the insurer with a sworn certificate from the receiver certifying "that it was not possible to so administer the estate as to pay its indebtedness in full." This certificate the receiver could not and did not give until December 21, 1896; and it could not, therefore, be "furnished" during the term of the first bond. The loss did not, therefore, result during the period of the first bond, but did result during the term of the renewal bond. The second loss proven was for a loss upon sale and shipments, during the currency of the first bond, to the Geo. H. Taylor Company. The insolvency of that company, under the facts and terms of the bond, could only be proven by judgment and return of nulla bona, and this was not possible until November 13, 1897, and during the life of the renewal bond. A question arose in respect to the bona fides of this nulla bona return, which was submitted to the jury upon a correct charge, who found for the plaintiff. Both losses proven were, therefore, for losses sustained by sales and shipments made during the term of the first bond, but neither loss became a provable loss until insolvency, within the terms of the contract, had been established in the method prescribed by the bond. Neither loss was provable against the first bond, because "insolvency," within the meaning of the bond, did not result and could not be notified, as required by the fourth condition of the bond, within the period of the bond. Both claims were, therefore, barred, unless they are saved by the eighth condition of the bond. That condition is in these words:

"In case this bond is renewed, and the premium on such renewal is paid at or before the expiration of this bond, loss on sales covered according to the terms, conditions, and limitations hereof, resulting after said date of expiration upon shipments made during the term of this bond, may be proven under and subject also to the terms and conditions of such renewal. In case this bond is a renewal, and the premium has been paid at or before the expiration of the preceding bond, covered losses occurring during the term of this bond on shipments made during the term of the said preceding bond may be proven hereunder, subject also to the terms, conditions, and limitations of said preceding bond."

Both the first and second bonds contain this precise condition, and the terms, conditions, and limitations of each are identical, save in respect to the initial loss and single debtor limitation. The clear purpose and intent of this provision was to carry forward and indemnify the insured against losses which might result from sales and shipments during the period of the first bond, but which would not be provable, under the prescribed terms of the bond, within the period of its life. This extension of the time during which losses might be provable is made dependent upon the issuance of a renewal policy. The purpose of the renewed policy was twofold: First, it was a guaranty against loss upon sales and shipments made during its period; and second, it secured or extended the guaranty of the preceding bond to losses upon sales during its period which did not technically become provable during its term. The controversy turns upon the question as to whether the "initial loss" and "single debtor liability limit" of the first policy or of the renewal are applicable when the losses proven are upon sales and shipments made during the period of the original bond, but which do not result in losses

within the meaning of the policy until after its expiration and during the term of a renewal. The "initial loss" is that loss which the indemnified agrees to bear before any loss shall be recoverable under the bond. What this loss to be first borne by the insured shall be is the subject of agreement, and constitutes a part of the written portion of the policy. By the face of the policy the guaranty is "against loss, not exceeding $20,000," resulting from insolvency of debtors, "over and above the loss of $2,000 agreed first to be borne by the said indemnified, on total gross sales, and amounting to $400,-000 or less." By condition 5 this loss to be first borne by the indemnified is to be increased by one-half of 1 per cent. on gross sales in excess of $400,000. By condition 6 "the claims provable under this bond include only the amount to be first borne by the indemnified and the amount of this bond." Other parts of the bond might be cited to same effect. The initial loss, as we construe the bond, is, therefore, that part of the provable or covered losses which the indemnified must first bear. Thus, to recover the full penalty of the bond in suit, the indemnified would be required to prove losses upon covered risks of $22,000, for from the aggregate of covered losses there must be deducted $2,000 as that part of the loss which the indemnified must first bear. By the single debtor limitation is meant that condition of the policy which excludes from the protection of the bond any amount of a claim against a single debtor in excess of an agreed sum or proportion. Thus, by the third condition, it is provided that "the gross amount covered under this bond against any one insolvent debtor is limited to 30 per cent. of the lowest amount of the capital rating" given by the Bradstreet Commercial Agency, and that "no amount against any one such insolvent debtor shall be covered for more than $10,000." The same condition in another clause provides that "it is agreed that the said percentages and limitations fix the extent of the gross liability of this company at time of insolvency, and on any claim which exceeds the said percentages and limitations all amounts realized or secured shall be applied as hereinafter provided." By condition 9, "when the amount of a claim against any debtor at the time of insolvency exceeds the amount covered by this bond, all amounts realized or secured therefrom shall be deducted pro rata." Again, condition 12B provides that, "should the company be liable for a part only of any claim, the net amount realized therefrom shall be proportionately divided." By these conditions the subject-matter covered by the contract is so limited as to exclude from the protection of the policy that part of a claim against a single debtor which is in excess of $10,000. Thus, in the case of the claim against the Geo. H. Taylor Company, the claim aggregated something in excess of $25,000 at time of insolvency. In ascertaining the gross liability of the insurer, no part of this claim should be included in excess of $10,000. The remainder is not "covered" by the bond. Now, the amount of the initial loss to be first borne by the plaintiff below is fixed by the first or original bond at $2,000, or one-half of 1 per cent. on gross sales during the period of the bond, if the gross sales exceed $400,000. In the renewal bond the initial loss is increased to $6,000, or 1½ per cent. on gross sales,

if sales exceed $400,000. The single debtor limitation in the first bond is $10,000, and in the renewal bond this is reduced to $6,000. The first clause of the eighth condition contemplated that losses might "result," in the sense of the bond, on sales made during its currency after its expiration. By renewal of the bond such losses might be provided for. But the losses intended to be protected by a renewal must be those arising from "sales covered according to the terms, conditions, and limitations" of the bond current when the sales were made. This is the plain meaning of the clause which holds out the inducement to renew the bond. The second clause, which became effective only upon renewal, also provided that, if the bond be a renewal, "losses occurring during the term of this bond on shipments made during the term of the preceding bond may be proven hereunder, subject also to the terms, conditions, and limitations of said preceding bond." Thus, by the promissory terms of the first claim of this condition, the renewal is to be an extension of the protection afforded by the existing bond, and this purpose is equally evident from the words of the second clause, which is the contractual clause of the renewal bond in respect to losses originating under the preceding bond. By the terms of the second clause, "covered losses occurring during the term of this bond on shipments made during the term of the said preceding bond" are provable under and against the renewal bond, subject to "the terms, conditions, and limitations of said preceding bond." The words, "may be proven hereunder," refer to the penalty of the bond, and not to the terms, conditions, and limitations of the bond. For the terms, conditions, and limitations of claims originating during the currency of the preceding bond we are to look to the preceding bond. To say that the "terms, conditions, and limitations" of both bonds must apply, would bring about an irreconcilable conflict, which could only be solved by placing upon the contract that interpretation most favorable to the insured. Under the preceding bond the claim against the Geo. H. Taylor Company was "covered" to the amount of $10,000. Under the conditions and limitations of the renewal it is "covered" only to the extent of $6,000. Under the first bond the conditions required the indemnified to first bear a loss of $2,000. Under the second, the indemnified must first bear a loss of $6,000. If, therefore, the limitations and conditions of the renewal policy are to control, there could be no recovery whatever in respect to this Taylor loss. The initial loss and single debtor liability of the two bonds are irreconcilable if we construe the conditions of the renewal bond as applicable to losses resulting from sales under the first bond. They are not so if we limit the terms and conditions in respect of the initial loss and single debtor liability, found in the new bond, to sales occurring during its period. This is the most reasonable interpretation, and accords most nearly with the justice of the matter. In the case of American Credit Indemnity Co. v. Athens Woolen Mills, a cause decided by this court, and reported in 34 C. C. A. 161, and 92 Fed. 581, we found a difficulty of the same general character arising out of a doubt as to whether the definition of insolvency found in a renewal policy applied to a loss which was provable un-

der the renewal bond, though it arose from sales made during the currency of the preceding bond. The condition by which the renewal bond was made to apply to losses originating under the preceding bond was not in all respects identical with that involved here, though substantially the same. Referring to the promissory clause of the preceding bond, we said:

"We are to consider that by that clause it was clearly intended to extend the benefit of the old bond to cover sales of goods made under that bond, though losses thereon did not accrue during its life; and we ought not to defeat that intention and just expectation of the assured, unless the words of the renewal bond necessarily require it. Do they require it? We think not. In the light of the circumstances and the necessity for reconciling the clauses of the two bonds, the words of the clause 8 of bond No. 2,443 may be reasonably construed to mean merely that the formal proof of loss is to be made under the renewal bond, and during its life; while clauses Nos. 8 and 11 of bond No. 1,540 shall be given effect by holding that the fact of the loss is to be settled by the terms of the old bond."

In the same case we held bonds of this character to be essentially insurance contracts, and that doubtful and ambiguous expressions were to be construed most favorably to be insured. Applying this rule, we have no hesitation in holding that the provisions which determine the amount of the loss to be first borne by the indemnified, and which fix the amount of the single debtor liability applicable to claims resulting from sales during the period of the preceding bond, are those found in the preceding bond.

2. The definition as to the meaning of "initial loss" already given leaves little that need be said in support of the conclusion we reach that the agreed loss to be first borne by the insured, called the "initial loss," must be deducted from the gross amount of provable or "covered" losses. The guaranty is "against loss not exceeding $20,000 over and above the loss of $2,000 agreed to be first borne by the said indemnified"; and by condition 6 "the claims provable under this bond include only the amount to be first borne by the indemnified and the amount of the bond." This means that, in order to recover the full indemnity of $20,000, there must be proof of covered losses equal to the sum of the indemnity and the loss to be borne by the insured. This is the plain meaning of the contract, and accords with the construction placed upon similar provisions in bonds of the same character. Rice v. Insurance Co., 164 Mass. 285, 41 N. E. 276; and Brierre v. Indemnity Co., 67 Mo. App. 385.

3. A question arose as to the amount of the provable loss arising out of sales to the Geo. H. Taylor Company. The gross amount of the claim at date of the insolvency of that debtor was about $25,500. Subsequently, $11,616.83 was paid to the plaintiffs by one Newton W. Taylor, in compromise of a suit brought against him by the plaintiff below to hold him liable for the whole debt as a partner. It was claimed that this payment was not a credit against the liability of the Geo. H. Taylor Company, but a price paid for peace. This contention was rightly overruled by the circuit judge, who held that the sum so received was realized upon the claim against the Geo. H. Taylor Company. Only $10,000 of the gross loss sustained by the indemnified was covered by the policy, and only that amount was a

provable loss. The credit of $11,616.83 was properly prorated between the provable loss and that part of the claim not covered by the bond. This method of distributing the credit is plainly required by the clause in condition 9, which provides that, "when the amount of a claim against any debtor at the time of insolvency exceeds the amount covered by this bond, all amounts realized or secured therefrom shall be deducted pro rata."

4. On the afternoon of the day upon which the first bond was about to expire it was renewed at the suggestion of the agent of the credit company that such a renewal was necessary that day, in order to preserve the right to prove losses on sales during the period of the bond about to expire. To preserve this right, the agent of the plaintiff in error suggested that the defendant in error should give a short note. This was done, and the note paid December 12, 1896, by a check payable to the order of the plaintiff in error. This note was only given because the president of the paper company, to whom the suggestion was made, had said he had no checks with him at the time. The claim now is that the language of condition 8, that "in case this bond is renewed, and the premium on such renewal is paid, at or before the expiration of this bond," etc., prevents proof of any claims originating under the preceding bond, notwithstanding the issue of the bond and the retention of the premium. The renewal policy was taken out for the purpose of securing protection against impending losses upon sales made during period of first bond, and at the suggestion of the agent of the credit company a short note was accepted as payment. This note was paid by a check payable to the order of the credit company. It has been cashed, and no offer has been made to return the premium so received. There is no evidence as to the limitations upon the power of the agent, who, from all that appears, was a general agent. The renewal policy was issued and bears date as of November 30, 1896, and acknowledges receipt of premium. The answer makes no such defense. Upon the contrary, it expressly admits "that on November 30, 1896, it issued to plaintiff its second bond, No. 8,536, for the period cited in the petition." Under the circumstances we agree with the learned trial judge that the defense was inadmissible and unavailing.

5. Both parties sued out writs of error, and have assigned numerous errors. The court below submitted to the jury only one question,—the bona fides of the nulla bona return to an execution from a judgment upon the Geo. H. Taylor Company claim,—and instructed them, if they found for the plaintiff upon the issue submitted, to return a verdict for $5,228.58; but, if they found for the defendant upon that issue, to return a verdict for the defendant upon all the issues. The jury found for the plaintiff upon the issue so submitted, and returned a verdict for the plaintiff for $5,228.58. This sum was arrived at by a construction of the bond in accordance with the conclusion we have herein indicated.

We have not thought it necessary to pass upon each assignment of error separately. The views we have expressed above include an interpretation of those parts of the bond material to the issue upon which the case must turn. The assignments of error as to evidence

admitted over objection have been examined. None of them are well taken or material. The instruction given the jury was inevitable, and the judgment must be affirmed. The costs will be divided.