UNITED STATES LIGHT & HEATING CO. v. J. B. M. ELECTRIC CO. et al.

(Circuit Court of Appeals, Second Circuit. January 29, 1912.)

No. 140.

CORPORATIONS (§ 426*)—ASSIGNMENT BY PRESIDENT—RATIFICATION.
      Three persons owned all of the stock of a corporation, and composed the board of directors. One who was the president in the name of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporation executed an assignment of an application for a patent which had been made by him, and had been assigned to the corporation, and of which the assignee claimed to be the owner. One of the other directors was present and signed as a witness, and the other had knowledge of it soon after, but no notice was given to the assignee of any dissent, although the parties had further business transactions together, during which there was a settlement and mutual receipts, and releases of all claims and demands were given. *Held*, that such conduct amounted to a ratification of the assignment by the corporation, and that it could not thereafter make a valid assignment of the application to another.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. § 426.*]

Appeal from the Circuit Court of the United States for the Western District of New York.

Suit in equity by the United States Light & Heating Company against the J. B. M. Electric Company and others. Decree for complainant (189 Fed. 382), and defendants appeal. Modified and affirmed.

Alan D. Kenyon and W. H. Kenyon, for appellants.
K. H. Addington, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a bill in equity praying for the reformation of an assignment of an application dated September 30, 1907, No. 404,271, for letters patent, executed by the J. B. M. Electric Company inadvertently under the name of the "J. B. M. Company," and also that a subsequent assignment thereof by the same company to the Gould Coupler Company be canceled as a cloud upon the complainant's title, and that the revocation by the inventor of his power of attorney accompanying the said application be annulled.

The defendant filed a cross-bill, praying that the aforesaid assignment, as well as an assignment of the same date, No. 404,272, be declared void and canceled of record, or that the complainant be ordered to reassign the same. The introduction of an entirely new matter not mentioned in the original bill was improper, and we shall therefore not consider the rights of the parties with reference to application No. 404,272. It is to be noted that the cross-bill alleges no fraud or duress, but only charges that the assignment was executed by the president of the J. B. M. Company without consideration and without authority.

The present parties are assignees, with no greater rights than their assignors, and we shall hereafter speak of the assignors. The complainant's assignor, the Bliss Electric Car Lighting Company, was engaged in the manufacture of devices for electric lighting, and John W. Jepson, Alexander McGarry, and George R. Berger were associated together as partners in the invention and promotion of devices for electrical distribution. January 8, 1907, these parties entered into an agreement, whereby Jepson and his associates assigned to the Bliss Company four applications for patents, Nos. 312,223, 276,276,

314,531, and 288,055, and the Bliss Company agreed to manufacture, sell, and pay royalties upon devices under the same. The agreement provided as to future inventions:

"Tenth. It is understood and agreed that said party of the second part shall have the right to manufacture, use, sell and rent any and all improvements that said parties of the first part may make, either jointly or severally, upon the aforesaid inventions, and also the right to manufacture, use, sell or rent any apparatus devised by said parties of the first part, either jointly or severally, which may be in any way applicable to systems embodying any features of the aforesaid inventions, or which may in any way fall within the scope of the patents that may be obtained for the aforesaid inventions; provided, however, that such inventions, improvements or apparatus shall be made, sold, leased licensed or rented only in equipments or apparatus embodying in whole or in part the inventions in the aforesaid applications and patents on which royalty is payable under this agreement and nothing in this agreement shall be construed to prevent the parties of the first part from granting rights or licenses to others for improvements or further inventions not embraced within or covered by the aforesaid applications or patents which have been assigned to the party of the second part."

The subject of cancellation of the contract was regulated in article 20 as follows:

"Twentieth. It is understood and agreed that in the event that this agreement be cancelled or terminated under any of the provisions thereof, then the party of the second part shall reassign to the parties of the first part the patent or patents and application or applications for letters patent covering the equipment or apparatus affected by said cancellation or termination; and in the event that this agreement be not renewed at the expiration of the term of five years herein provided, then the party of the second part shall reassign to the parties of the first part all the applications and letters patent for the aforesaid inventions or improvements made thereon by the parties of the first part, either jointly or severally; and the party of the second part agrees to make, execute and deliver to said parties of the first part any and all deeds, writings or instruments of assignment necessary or required to vest in and secure to said parties of the first part the full and complete title, rights and interests in and to said inventions and improvements, in accordance with the provisions of this clause."

January 31, 1907, Jepson and his associates assigned their common interests to a corporation they had organized under the name of the J. B. M. Electric Company.

The Bliss Company constructed a car lighting device under one or more of these applications in accordance with what is known as the "booster" system. Upon exhibition at an electrical convention held at Atlantic City in June, 1907, it proved a conspicuous failure. Thereupon all parties to the contract agreed that future efforts should be spent upon application 312,223. Just here arises the vital issue of fact. The witnesses of the Bliss Company say that it thereupon furnished to Jepson an invention theretofore made by Bliss of an automatic reed regulator under an agreement that all work in improving it was to be done by Jepson and his associates for the sole benefit of the company, and not under the contract of January 8, 1907. On the other hand, Jepson and his witnesses say that all work done upon it was to be done under the contract and covered by the contract as an improvement upon application 312,223. Either account might be true, and there is much in the record to sustain each, but in disposing of the dispute we shall rely upon a few facts that seem to us controlling.

Jepson's work did result in improvements which were covered by an application in his name for letters patent No. 404,271. March 28, 1908, the parties to the contract of January 8, 1907, in accordance with article 20 thereof, canceled that agreement. The Bliss Company reassigned to Jepson and his associates the applications mentioned in it, and delivered copies of the same, together with the drawings, for which Jepson and his associates receipted April 3, 1908.

Nothing whatever was said about application No. 404,271. If this application had been still in the name of Jepson, the inventor, this omission would be no ground for comment. But in point of fact he had on the day of its date, September 30, 1907, assigned it to the J. B. M. Electric Company, and as president of that company (though the word "Electric" was left out of its name in the actual execution) assigned it to the Bliss Company. Evidently it should have been reassigned if it was covered by the agreement of January 8, 1907, as the defendant contends.

July 30, 1908, the J. B. M. Company assigned applications Nos. 312,223, 276,276, 314,531, letters patent No. 878,305, which had issued upon application No. 288,055, all of which had been assigned to the Bliss Company under the contract of January 8, 1907, together with application No. 419,993 and "any others the numbers of which may have been omitted in this agreement" to the Gould Coupler Company, the defendant and cross-complainant, without making any mention of application 404,271.

December 4, 1908, the J. B. M. Company executed an assignment of No. 404,271 specifically to the Gould Company, which recited that it was owned by it July 30, 1908, and was therefore covered by the assignment of that date.

Upon the foregoing statement it would seem to be perfectly clear that the complainant is entitled to a decree and that the cross-bill should be dismissed. But the defendant, while not standing upon the inventor's obvious inadvertence in signing the assignment dated September 30, 1907, in the name of the J. B. M. Company, instead of the J. B. M. Electric Company, says that this assignment was without consideration, and that Jepson as president of the company had no authority to execute it.

If the assignment were without consideration, equity would not lend its aid to enforce it. The assignment recited a consideration of $1 in hand paid and other good and valuable consideration, the receipt of which was acknowledged. The witnesses for the Bliss Company testify that Jepson and Berger were paid for the work they did on the Bliss regulator, and that it was delivered to them upon the express agreement that whatever they accomplished in connection with it should be for the sole benefit of the Bliss Company. This was quite consideration enough if the testimony is true. And we are convinced that it is true because the assignment of the absolute title to the Bliss Company instead of its having a mere shop right under article 10 of the agreement of January 8, 1907, and the fact that the parties did not in the cancellation agreement of March 28th, mention the assignment, nor make nor require any reassignment thereof, are wholly in-

consistent with their understanding that the assignment was made under the contract of January 8, 1907.

We come now to the question of the authority of Jepson to execute the assignment as president of the J. B. M. Company. It is true that the power of a president of a corporation to dispose of its property as president is very limited, and that this assignment was not made in pursuance of any resolution of the board of directors. . But this corporation was owned by the three individuals Jepson, Berger, and McGarry in equal shares. They constituted the board of directors. Jepson and Berger were both present when the assignment was made. Although various objections were raised by them, Jepson executed it as president and Berger signed as a witness.

As against McGarry, the assignment might have been held inoperative, but he was informed of it as early as October, 1907. Yet, though the complainant in its correspondence was urging that the assignment should be corrected by re-execution in the name of the J. B. M. Electric Company, that company did not reply to the Bliss Company's letters until February 3, 1908, when it wrote as follows:

"I beg to acknowledge the receipt of your favor of Dec. 18, 1907, and those of Jan. 9 and 18/08, and trust you will pardon me for not having answered before this date.

"In replying will say that I have fully noted the discrepancy referred to in yours of Dec. 18, which, of course can easily be corrected.

"But this is not the only defect, as there is I believe a more serious discrepancy, which I came across and have been trying to straighten out for some time. I have no doubt but that everything will be all right and the proper assignment made and in accordance with our agreement.

"We expect to have a meeting of the J. B. M. Electric Co. in the near future and the matter finally disposed of.

"As president of the J. B. M. Electric Co. I can assure you that we are willing to make all the necessary assignments as provided for in our agreement.

"You can expect to hear from me in the near future with reference to the subject in question, and trust that entire matter will be straightened out."

In the meantime, on January 16, 1908, the board of directors had resolved not to execute the corrected assignment nor to ratify the assignment already made. No notice of disaffirmance, however, was ever given to the Bliss Company. On March 28, 1908, the original contract was canceled by the parties to it, and on July 30, 1908, and December 4, 1908, as we have seen, the J. B. M. Company assigned the same applications to the Gould Coupler Company, and on November 27, 1908, the defendant Jepson, the inventor, revoked the power of attorney he had given to the attorney for the Bliss Company to act for him in the Patent Office.

We are of opinion that the J. B. M. Company ratified the assignment executed by Jepson and witnessed by Berger. The cancellation agreement of March 28th is a further ground for sustaining the decree. It extinguished the agreement of January 8, 1907, and any rights that either party had under the same. It recited:

"Whereas, the parties hereto do now desire to terminate, cancel and annul first-mentioned agreement and the rights given and granted thereby; and the said second party has reassigned, transferred and conveyed to the said first parties by separate instrument of even date herewith, the entire right in and to the said inventions, applications and letters patent.

"Now therefore, for and in consideration of the execution and delivery of said reassignment, transfer and conveyance of said inventions, applications and letters patent, and of the payment of the second party to the first parties of the sum of one thousand five hundred dollars ($1,500), the receipt whereof is hereby acknowledged, and of the cancellation and termination of the said first-mentioned agreement, the said first and second parties, for themselves, their and each of their legal representatives and assigns, do hereby mutually release and discharge each other from any and all claims of every kind and nature under said first-mentioned agreement, and mutually acknowledge each to the other full satisfaction thereof, and the parties hereto, for themselves, their legal representatives and assigns, do hereby agree and declare that said first-mentioned agreement is hereby terminated, cancelled and annulled and that all rights and privileges given and granted thereby and all claims thereunder which either party now has or may or shall hereafter have are satisfied and terminated."

The form of the decree in reciting findings of fact and evidence is not in accordance with the practice of this circuit. So much of the first 27 pages as contains this matter should be stricken out, as well as so much of the ordering part as declares the complainant to be the owner of application No. 404,272. See Delaware, Lackawanna & Western R. R. Co. v. City of Syracuse, 165 Fed. 631, 92 C. C. A. 41.

As thus modified, the decree is affirmed, with costs.