## AMERICAN CREDIT INDEMNITY CO. v. ATHENS WOOLEN MILLS.

### (Circuit Court of Appeals, Sixth Circuit.    March 7, 1899.)

### No. 629.

1. APPEAL—REVIEW—ACTION TRIED TO COURT.

Where the issues in an action at law, which present mixed questions of law and fact, are submitted to a circuit court, under Rev. St. § 649, and a general finding made, no question arising upon the trial is open to review in the appellate court, under section 700, except rulings made during its progress, and duly excepted to at the time, which do not include the general finding of the court; but error may be assigned in the circuit court of appeals upon a material defect apparent on the record proper, which would have been fatal on a motion in arrest of judgment after verdict.

2. INSURANCE — INDEMNITY AGAINST LOSS BY INSOLVENCY OF DEBTORS—CONSTRUCTION OF CONTRACT.

A bond insuring the obligee, a manufacturer, against loss by the insolvency of its debtors, provided that "no loss shall be proven after its expiration, provided, however, that, in case this bond is renewed, and the premium on such renewal is paid, at or before the expiration of this bond, loss resulting after such date of expiration, on shipments made during the term of this bond, may be proven during the term of the renewal bond next immediately succeeding." *Held*, that as to such a loss, a renewal having been made, in view of the language of both bonds, the question of what constituted insolvency was governed by the terms of the first bond, and not by those of the second, under which the insolvency occurred and the loss was proved.[1]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

J. B. Sizer, for plaintiff in error.

F. H. Mansfield, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge.    This was a bill of complaint filed in the chancery court of McMinn county, Tenn., by the Athens Woolen Mill, a corporation organized under the laws of Tennessee, against the American Credit Indemnity Company, organized under the laws of Missouri, to recover an amount alleged to be due under a policy of credit insurance, or, as it is called by the company issuing it, "a bond of indemnity." The cause was removed, on the ground of diversity of citizenship, to the court below, and was placed upon the law docket; a jury was waived in writing, and the cause was submitted to the court, which entered the following judgment:

"This cause was heard before the Honorable C. D. Clark, judge, etc., without the intervention of a jury, a jury having been waived by stipulation in writing, signed by plaintiff and defendant; and the court, having heard the evidence and argument of counsel, finds the issues joined in favor of the plaintiff, and that the defendant is justly indebted to plaintiff, principal and interest to the present date, in the sum of three thousand one hundred and thirty-eight dollars and eight cents. It is therefore adjudged by the court that Athens Woolen Mill recover of American Credit Indemnity Company said sum of three thousand one hundred and thirty-eight dollars and eight cents

---

[1] As to credit insurance, see note to Indemnity Co. v. Wood, 19 C. C. A. 271.

($3,138.08), together with all the costs of this cause, for both of which execution will issue. To which action of. the court in finding the issue in favor of the plaintiff, and rendering judgment against the defendant, the defendant excepts; and thereupon the defendant moved for a new trial, which motion, being considered by the court, is overruled, and defendant excepts."

No exceptions to the rulings of the court upon which errors have been assigned were taken in the progress of the trial.

It is well settled that where, in an action at law, issues which present mixed questions of law and fact are submitted to a circuit court of the United States, and are tried by it without a jury, under the provisions of section 649 of the Revised Statutes, and the court makes a general finding, nothing is open to review in the appellate court except the rulings of the circuit court in the progress of the trial, and such rulings do not include the general finding of the circuit court. Insurance Co. v. Hamilton, 22 U. S. App. 386, 11 C. C. A. 42, and 63 'Fed. 93. In such a cause, however, it is not too late to allege as error in the circuit court of appeals· a material defect apparent on the record proper, which would have been fatal upon a motion in arrest of judgment after verdict; but only such material defects, and not the evidence, may be reviewed. Id., 22 U. S. App. 548, 11 C. C. A. 42, and 63 Fed. 93.

The only ground, then, which the plaintiff in error can urge for reversal, is that the judgment was erroneous upon the face of the pleadings. These were the bill, the answer, and the replication, which, though in name and form pleadings in chancery, were in fact, by the order transferring them to the law docket, treated as common-law pleadings. The replication, being according to the form of equity, was one denying all facts averred in the answer, except such as were averred or admitted in the bill. In support of the judgment, it is to be presumed that all the averments of the bill were proven, and that all the averments of the answer not admitted by the bill were disproven. The burden is on the plaintiff in error in this case to show that, upon the face of complainant's bill, the judgment entered was erroneous.

The bill avers that on November 23, 1893, in consideration of $145, the defendant company issued to complainant its bond of indemnity No. 1,540, guarantying complainant against loss to the extent of not exceeding $5,000, "resulting from insolvency of debtors, as thereinafter defined," over and above a net loss of $1,125 first to be borne by complainant on total gross sales of $125,000, to be made between the 1st of January, 1894, and December 31, 1894; that, by the terms of the bond, it expired on December 31, 1894; that, by clause 8 of its conditions, it was provided that "no loss can be proven after the expiration, provided, however, that,. in case this bond is renewed, and the premium on such renewal is paid· at or before the expiration of this bond, loss resulting after such date of expiration, on shipments made during the term of this bond, may be proven during the term of the renewal bond next immediately succeeding"; that by clause 11 it was stipulated that "the term 'insolvency of debtors,' wherever used in this bond, is agreed to be general assignments of, or attachments against, insolvent debtors, the absconding of debtors, or executions in favor of the indemnified returned unsatisfied during the term of the

bond, or the renewal thereof, as aforesaid." Complainant further averred that it sold and delivered a large amount of goods to Waxelbaum & Son, a business firm in Macon, Ga., during the life of bond No. 1,540; that, before the expiration of the bond, complainant renewed it, paying the required premium, and received bond No. 2,443 in renewal; that in nearly all respects this bond was like the old; that its eighth condition was:

"In case this bond is renewed, and the premium on such renewal is paid, at or before the expiration of this bond, loss resulting after said date of expiration, upon shipments made during the term of the bond, may be proven under such renewal bond, in accordance with the terms and conditions of such renewal. In case this bond is a renewal, and the premium has been paid at or before the expiration of the preceding bond, losses occurring during the term of this bond, on shipments made during the term of said preceding bond, may be proven hereunder."

Complainant further averred that Waxelbaum & Son failed during the term of renewal bond 2,443; that their affairs were placed in the hands of a receiver; that they were so utterly insolvent that their estate would pay but five or six cents upon the dollar; that complainant at once notified defendant, and brought suit upon its claim of $3,943.97, owing from the insolvent firm, recovered judgment in a Georgia court, and issued execution thereon, which was returned nulla bona, of which defendant was notified; that there has been no final settlement of the Waxelbaum receivership suit, and that the defendant company refused to pay on the ground that the insolvency agreed upon as the ground for recovery had not yet arisen. Complainant further averred that the amount of its sales between January 1, 1894, and December 31, 1894, was $156,583.91; that the amount due from Waxelbaum was $4,159.95; that complainant must bear loss of nine-tenths of 1 per cent. of the total sales, which, being deducted, left $2,750.70 as the amount due from defendant.

The answer set out, as clause No. 11 of bond No. 2,443, the following:

"The term 'insolvency of debtors,' whenever used in this bond, is defined to be: Where a debtor shall have made a general assignment for the benefit of creditors; where an attachment for a debt for merchandise sold during the term of this bond shall have been levied on his general stock in trade; where a writ of execution shall have been issued against him in favor of the indemnified, and returned unsatisfied, except where such execution has been so issued and returned after receiver has been appointed of the property of such debtor; where a receiver of the general stock in trade of a debtor shall have been appointed, and the amount of the claim of the indemnified has been ascertained by decree, in which event the net amount due at the time of adjustment shall be included in the calculation of losses under this bond; where a debtor's general stock in trade shall have been sold under an execution or other legal process in favor of the indemnified."

It is doubtful whether we ought to consider the foregoing clause as before us in reaching a conclusion in this case. The complainant in his bill proposed to file bond No. 2,443 during the progress of the cause, but it was not attached as an exhibit or part of the bill. The averment of the answer that clause No. 11 of bond No. 2,443 was as given above would seem to be denied by the general replication, and so presumably disproven by the evidence. It is not necessary for us, however, to decide this point; because, even if we assume clause No.

11 to be as set forth in the answer, it will not change our conclusion.

The question before us is one of construction. Is the loss guarantied against under clause 8 of bond 1,540, in case of a renewal, loss resulting from insolvency, as defined in that bond, or as defined in the renewal bond 2,443? If the former, then the judgment is supported by the averments of the bill; if the latter, then, because the affairs of the debtor firm were in the hands of a receiver, a judgment, execution, and nulla bona return are not the test of insolvency, and the plaintiff's case is not made out. The exception as to the receivership was a new provision of bond No. 2,443.

Clause 8 of No. 1,540 was of a somewhat illusory character. It did not become operative and binding until renewal, and it was, of course, possible for the insurer to modify the effect of clause 8 by the terms of the very renewal upon which alone it became his contractual obligation. These contracts of indemnity are merely contracts of insurance, carefully framed, to limit as narrowly as possible the liability of the insurer, and doubtful expressions in them are to be construed favorably to the insured. Supreme Council Catholic Knights of America v. Fidelity & Casualty Co., 22 U. S. App. 439, 11 C. C. A. 96, and 63 Fed. 48; Guarantee Co. of North America v. Mechanics' Sav. Bank & Trust Co., 47 U. S. App. 91, 26 C. C. A. 146, and 80 Fed. 766. Taking clause 8 of bond No. 1,540 alone, it cannot be doubted that "the loss resulting after such date of expiration on shipments made during the term of this bond," which was to be proven during the term of the next renewal bond, was intended to be the same kind of a loss as that for which the bond was given, to wit, a loss resulting from insolvency, as in bond No. 1,540 defined. This conclusion is enforced by the language of clause 11 in bond No. 1,540, in which it is agreed that insolvency shall be return of judgment executions unsatisfied during the term of the bond or the renewal thereof aforesaid. Does clause 8 of bond No. 2,443 indicate an intention to change the character of the loss upon goods sold during the life of the previous bond, for which the insurer should become liable? The material words of that clause are: "In case this bond is a renewal, * * * losses occurring during the term of this bond on shipments made during the term of said preceding bond may be proven hereunder." Does proof, under the renewal bond, require that the insolvency shall be established according to the definition of that bond? Standing alone, it may be conceded that this would be the natural meaning of the words; but we are to construe this clause with clauses 8 and 11 of bond No. 1,540. We are to consider that, by that clause, it was clearly intended to extend the benefit of the old bond to cover sales of goods made under that bond, though losses thereon did not accrue during its life; and we ought not to defeat that intention and just expectation of the assured, unless the words of the renewal bond necessarily require it. Do they require it? We think not. In the light of the circumstances and the necessity for reconciling the clauses of the two bonds, the words of the clause 8 of bond No. 2,443 may be reasonably construed to mean merely that the formal proof of loss is to be made under the renewal bond and during its life, while clauses Nos. 8 and 11 of bond No. 1,540 shall be given effect by holding that the fact of the loss is

to be settled by the terms of the old bond. Settled in this way, it is not disputed that the averments of the bill are ample to support the judgment. The judgment of the circuit court is affirmed.