PHILADELPHIA CASUALTY CO. v. FECHHEIMER et al.

(Circuit Court of Appeals, Sixth Circuit.   February 2, 1915.   On Application
for Rehearing, April 16, 1915.)

No. 2470.

1. APPEAL AND ERROR &273—EXCEPTIONS TO DECISION ON REPORT OF REF-
EREE—NECESSITY OF SPECIFIC EXCEPTIONS.

Where an action at law in a federal court is tried to the court by stipu-
lation, pursuant to Rev. St. § 649 (Comp. St. 1913, § 1587), and by consent
the cause is referred to a referee to take the evidence and report his
findings of fact and conclusions of law, a general exception to the ac-
tion of the court in overruling in a mass the exceptions taken to the re-
port of the referee is too indefinite to present any question for review by
the appellate court, and also, if any one of the rulings of the referee ex-
cepted to was correct, the exception is not good.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1590,
1606, 1620–1623, 1625–1630, 1764;  Dec. Dig. &273.]

2. TRIAL &417—WAIVER OF RIGHT TO REVIEW RULING—PROCEEDING WITH
TRIAL.

An exception to the overruling of a motion for judgment at the close
of plaintiffs' evidence on the trial of an action to the court is waived by
the introduction of evidence in defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 980;  Dec. Dig.
&417.]

3. APPEAL AND ERROR &265—NECESSITY OF EXCEPTIONS ON TRIAL BY COURT
—SUFFICIENCY OF FINDINGS TO SUPPORT JUDGMENT.

No exception is necessary in a federal court to raise the question
whether, when a jury has been duly waived, the special findings of fact
by the court are sufficient to support the judgment rendered thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1461,
1536–1551;  Dec. Dig. &265.]

4. REFERENCE &4—POWER TO REFER—FEDERAL COURTS.

It is competent for a federal court to refer an action at law by consent
of the parties, and the fact that the referee is designated a "special mas-
ter" does not impair the validity of the reference.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 5;  Dec. Dig.
&4.]

5. APPEAL AND ERROR &848—REVIEW—FINDINGS OF COURT—ADOPTION OF
FINDINGS OF REFEREE.

When special findings of fact made by a referee are adopted by the
court in such manner as to show an intention to make such findings its
own, such intention will be given effect by the appellate court, and the
findings will be treated as having been made by the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3372–
3376;  Dec. Dig. &848.]

6. REFERENCE &102—REPORT—EFFECT OF CONFIRMATION.

By overruling all exceptions of both parties to the report of a referee,
and rendering judgment for the exact sum found by him to be due, the
court evidences its intention to adopt the findings of the referee as its
own.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 181–187:  Dec.
Dig. &102.]

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. TRIAL ⊚⟼393—TRIAL BY COURT—SPECIAL FINDINGS OF FACT—FORM AND CONTENTS.

Special findings of fact by a court or referee should consist of a concise and specific statement of the ultimate facts found, without recitals of the evidence or conclusions of law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 920–923; Dec. Dig. ⊚⟼393.]

8. APPEAL AND ERROR ⊚⟼850—REVIEW—QUESTIONS OF FACT.

Where counsel for appellant or plaintiff in error in the appellate court admit that the findings of fact made by the trial court are sustained by the evidence, such findings will be treated as in effect an agreed statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3346, 3351–3362, 3375, 3376; Dec. Dig. ⊚⟼850.]

9. APPEAL AND ERROR ⊚⟼733—ASSIGNMENTS OF ERRORS—SUFFICIENCY—SPECIFICATION OF ERRORS.

An assignment of error that "the court erred in entering judgment for the plaintiffs, to which the defendant then and there excepted," is insufficient to raise any question for review by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3025–3027; Dec. Dig. ⊚⟼733.]

10. INSURANCE ⊚⟼511 — CREDIT INSURANCE — LIABILITY OF INSURER — RENEWAL POLICY.

A credit insurance policy, or "bond," insuring against loss of accounts due the insured from customers for goods shipped during the calendar year 1903, contained a clause providing that, "if this bond is renewed on or before the date of termination thereof by the issuance of a new bond, the losses occurring during the term of the renewal on goods shipped during the term of this bond shall be included in the calculation of losses under said renewal the same as if the goods had been shipped during the term of such renewal bond." December 4, 1903, a second bond was issued, differing in some of its provisions, covering its term from October 1, 1903, to September 30, 1904. The only reference therein to the previous bond was a provision that losses occurring on goods shipped on and after October 1, 1903, should not be included under the first bond, but under the second. Held, that the second bond was a renewal of the first, within the meaning of the quoted clause of the first, and covered losses arising on shipments made during the term of the first bond previous to October 1, 1903.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. ⊚⟼511.]

11. INSURANCE ⊚⟼511—CREDIT INSURANCE—LIABILITY OF INSURER—RENEWAL POLICY.

The losses to which such clause relates are to be determined by the terms of the first bond, and not of the renewal, and the insurer is liable for a loss which comes within the terms of the first, although it is of a class not insured against by the renewal.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. ⊚⟼511.]

12. INSURANCE ⊚⟼511—CREDIT INSURANCE—LIABILITY OF INSURER.

Each bond provided that on sales not exceeding $450,000 during its term losses to the aggregate amount of $5,000, should constitute an initial loss to be borne by the insured, the insurer being liable only for an excess of loss above that sum, and that, if the sales exceeded $450,000, the initial loss should be proportionately increased. Held, that the fact that losses on sales made during the term of the first bond, but occurring during the term of the second, were payable under the latter, did not entitle the insurer to carry over the sales of the first term, and add them to those

of the second, for the purpose of increasing the amount of the initial loss thereunder.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. ☞511.]

**13. INSURANCE ☞511—CREDIT INSURANCE—LIABILITY OF INSURER.**

Where goods shipped by insured were returned, no sale was consummated, which can be computed in making up the total sales under the bonds.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. ☞511.]

**14. INSURANCE ☞175—CREDIT INSURANCE—LIABILITY OF INSURER.**

Although the renewal bond was not executed until December 4, 1903, a clause therein providing that "losses occurring on goods shipped on and after October 1, 1903," should be included thereunder, and not under the first bond, made the second bond effective for all purposes from that date.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 362–371; Dec. Dig. ☞175.]

**15. INSURANCE ☞552—CREDIT INSURANCE—LIABILITY OF INSURER.**

That a preliminary notice of loss required and given the insurer incorrectly stated that the debtor had been adjudged bankrupt, whereas in fact he had been closed on execution, was immaterial, where no objection was made on that ground, and the insurer was liable in either case.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1358; Dec. Dig. ☞552.]

**16. INSURANCE ☞146—CREDIT INSURANCE—CONSTRUCTION OF BONDS.**

Credit insurance bonds, like other insurance policies, if ambiguous in their language, are to be construed strictly against the insurer, by whom they were framed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. ☞146.]

**17. APPEAL AND ERROR ☞878—REVIEW—EXTENT OF RIGHT OF DEFENDANT IN ERROR.**

A defendant in error, who did not himself institute proceedings in error, cannot in the appellate court go beyond supporting the judgment and opposing the assignments of error by the adverse party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. ☞878.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Action at law by Henry H. Fechheimer, Laura Strauss, executrix of the last will of Louis Kiefer, deceased, and Samuel H. Fechheimer, partners as Fechheimer, Kiefer & Co., against the Philadelphia Casualty Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

J. L. Kohl, of Cincinnati, Ohio, for plaintiff in error.
Alfred Mack, of Cincinnati, Ohio, for defendants in error.

Before WARRINGTON and DENISON, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge. This is an action in assumpsit, brought by defendants in error, hereinafter called plaintiffs, against plaintiff in error, hereinafter called defendant, to recover on two so-called

credit indemnity bonds, which are in their nature and effect policies of insurance against loss on commercial accounts; said bonds having been issued by defendant to plaintiffs in return for premiums paid. The cause was one for trial by jury, but by stipulation in writing, duly signed by both parties hereto, in accordance with the provisions of section 649, United States Revised Statutes, a jury was waived and said cause submitted for trial by the District Judge; it being provided in such stipulation that the court was "to make special findings of fact and conclusions of law." This stipulation also contained the following clause:

"By consent and stipulation of the parties this cause is hereby referred to B. R. Cowen as special master herein, said special master being appointed by the consent and at the request of the parties and on account of his familiarity with accounts; said special master to take the evidence to be submitted by the parties hereto and report the same, together with his special findings of fact and conclusions of law upon the matters in controversy herein."

. The master named having died, another was, by order of the court, appointed in his place and directed to take testimony and report in accordance with the directions referred to. In pursuance thereof, the so-called special master, hereinafter called referee, took the testimony and thereafter filed a lengthy report, containing what he termed special findings of fact and conclusions of law, in which he found in favor of the plaintiffs on some items and in favor of the defendant on others, and as a result of his several findings found that plaintiffs were entitled to a judgment against defendant in the sum of $7,048.90, with certain interest.

The evidence, objections, rulings, and exceptions before the referee, together with his findings of fact and conclusions of law, were transcribed and returned as a part of his report. The report of the referee also states that the parties stipulated that the exceptions taken to the rulings of the referee on the admission and exclusion of evidence, as shown by the report, "be deemed as and stand as exceptions to said report, the same as if said exceptions were specifically filed with the clerk of the court." On the same day that the referee's report was filed with the clerk of the court, each of the parties filed exceptions to the report. We are concerned only with the exceptions filed by the defendant, which were 19 in number. The first of these alleged errors on the part of the referee "in the admission of evidence offered by the plaintiffs to which the defendant excepted" before the referee. This exception did not point out the particular evidence which was objectionable, or assign any reason for the objection, relying upon the stipulation reported by the referee to justify the failure to point out the particular rulings which it was desired to call to the attention of the court, and relying upon the objections made before the referee as a basis for the exceptions to be considered by the court. The second objection to the report of the referee alleged error on the part of the referee in the same indefinite manner "in exclusion of evidence offered by defendant to which defendant excepted" before the referee. The third exception to the referee's report was that he denied the motion for judgment in favor of defendant at close of plaintiffs' proofs; the fourth, that he overruled the

same motion at close of all the proofs; the fifth, the denial of a new trial by the referee. The other 14 exceptions alleged error on the part of the referee in specific findings of fact and conclusions of law.

Upon the hearing by the court of the exceptions filed by the respective parties, the exceptions of the defendant, like those of the plaintiffs, were overruled as a whole. To this the defendant excepted generally. Judgment was thereupon rendered against the defendant for the amount found by the referee to be due to the plaintiffs, to which the defendant excepted, without stating any objections, or assigning any reason for the exception. The bill of exceptions, which sets forth the report of the referee and the exceptions filed thereto, says that the court did "overrule said exceptions and confirm said report, * * * and enter judgment in favor of the plaintiffs, to all of which the defendant then and there excepted." The order entering judgment recites the hearing before the court on exceptions to the report of the referee, and says that:

"The court, being advised, does overrule the exceptions of plaintiffs to said report, * * * to which plaintiffs except, and does overrule the exceptions of defendant to said report, * * * to which defendant excepts."

The order then proceeds in the usual form of judgment for plaintiffs, and closes with this sentence:

"To which finding and judgment the plaintiffs except, and to which findings and judgment the defendant excepts."

The record shows no exceptions taken by the defendant to any of the rulings or proceedings of the court, except this general exception to the court's order in overruling the 19 exceptions as a whole, and the exception "to entering judgment." The defendant sued out this writ of error, and assigns 20 errors. The first 19 respectively allege that the court erred in overruling the 19 exceptions to the referee's report, and the twentieth that:

"The court erred in entering judgment for the plaintiffs, to which the defendant then and there excepted."

[1] At the threshold of our inquiry we are confronted with the question whether the record presents any error which we can properly review. Section 700 of the Revised Statutes is as follows:

"When an issue of fact in any civil cause in a Circuit Court is tried and determined by the court without the intervention of a jury, according to section 649, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the Supreme Court upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

This provision now applies to District Courts. Eastern Oil Co. v Holcomb, 212 Fed. 126, 128 C. C. A. 642; Nashville Interurban Railway v. Barnum, 212 Fed. 634, 129 C. C. A. 170.

"Under these statutes and the established construction given them by the courts, the power of this court is limited to the determination of the question whether errors were committed by the trial court in its rulings during the progress of the trial, and whether the special findings made by the court

were sufficient to support the judgment." Sayward v. Dexter, Horton & Co., 72 Fed. 758, at page 769, 19 C. C. A. 176, at page 186; Churchill v. Buck, 102 Fed. 38, 42 C. C. A. 148; Mason v. Smith, 191 Fed. 502, 112 C. C. A. 146 (Sixth Circuit).

It is clear that the general exception mentioned is too indefinite to present any question for review by an appellate court. Felton v. Newport, 92 Fed. 470, 34 C. C. A. 470 (Sixth Circuit).

This was settled by the decision in Boogher v. New York Life Insurance Co., 103 U. S. 90, 26 L. Ed. 310. In that case, by stipulation following the Missouri state practice, there was a waiver of jury in the lower court, reference to referee, testimony taken by the referee, rulings by the referee on admissibility of evidence, exceptions taken to such rulings, findings of fact and law by the referee, all of which were reported to the court, and to which the defendant filed 22 separate exceptions, including exceptions to the rulings of the referee on the admission of testimony and to his findings of fact and conclusions of law. These 22 exceptions were heard and overruled as a whole by the court, and defendant excepted generally. Judgment was entered in favor of plaintiff on the report of the referee. A bill of exceptions was taken. The writ assigned separate errors, based on the confirmation of the referee's report by the court. The proceedings and practice in that case, so far as affect the point decided, are so identical with those here considered that to recite them is but to repeat the situation here described. Mr. Chief Justice Waite, speaking for the Supreme Court in that case, in a unanimous opinion affirming the court below, says (103 U. S. at page 98, 26 L. Ed. 310):

"The whole case, therefore, turns on the exception to the overruling of the objections to the report. This exception is a general one, to the single order overruling the 22 specific objections as a whole. We have uniformly held that 'if a series of propositions is embodied in instructions (to the jury), and the instructions are excepted to in a mass, if any one of the propositions is correct, the exception must be overruled.' Johnston v. Jones, 1 Black [66 U. S.] 209 [17 L. Ed. 117]; Rogers v. The Marshal, 1 Wall. 644 [17 L. Ed. 714]; Harvey v. Tyler, 2 Wall. 328 [17 L. Ed. 871]; Lincoln v. Claflin, 7 Wall. 132 [19 L. Ed. 106]; Beaver v. Taylor, 93 U. S. 46 [23 L. Ed. 797]. The same rule should be applied to cases of this kind. Here are, so to speak, a series of propositions in respect to the report of the referee. They were overruled, and excepted to in a mass. If one of the propositions was correct, therefore, the exception will not be good. The party should, by his exception, direct the attention of the court to the specific proposition or propositions on which he relies, and separate it or them from the rest."

Boogher v. Insurance Co., supra, has often been cited with approval by the Supreme Court, and the rule there stated has never been changed. It would be difficult to find a case which would better illustrate the necessity for the rule than the one presented by this record. The defendant not only took 19 exceptions to the report of the referee, but the first of these was intended to be so broad that it should cover any one of 42 different exceptions taken by the defendant to rulings of the referee in admitting testimony offered by the plaintiffs. Twenty-four of the 42 were based on objections without any reason for the objections being stated, and most, if not all, of the other 18 exceptions were based on objections too general to be considered. Patrick v. Graham, 132 U. S. 627, 10 Sup. Ct. 194, 33 L. Ed. 460;

Boston & Albany Railroad Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. 830, 39 L. Ed. 1006; Baltimore & Ohio Railroad Co. v. Hellenthal, 88 Fed. 116, 31 C. C. A. 414; Western Union Telegraph Co. v. Burgess, 108 Fed. 26, 47 C. C. A. 168; Merchants' Ins. Co. of Newark, N. J., v. Buckner et al., 110 Fed. 345, 49 C. C. A. 80; Erie Railroad Co. v. Schomer, 171 Fed. 798, 96 C. C. A. 458.

[2] The exception to the overruling of the motion for a directed verdict at the close of plaintiffs' proofs was waived by introducing evidence in defense. Grand Trunk Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685, 30 L. Ed. 740; Northern Pacific Railroad Co. v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296; Union Insurance Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. 534, 31 L. Ed. 497; Robertson v. Perkins, 129 U. S. 233, 9 Sup. Ct. 279, 32 L. Ed. 686; Columbia Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; Bogk v. Gassert, 149 U. S. 17, 13 Sup. Ct. 738, 37 L. Ed. 631; McCabe & Steen Construction Co. v. Wilson, 209 U. S. 275, 28 Sup. Ct. 558, 52 L. Ed. 788. This is sufficient to show that the ruling of the court in overruling the exceptions filed by the defendant to the report of the referee was correct as to at least "one of the propositions," and therefore the general exception taken by defendant is not good. Holloway v. Dunham, 170 U. S. 615, 18 Sup. Ct. 784, 42 L. Ed. 1165.

[3] It is, however, well settled that no exception is necessary to raise the question whether, when a jury has been duly waived, the special findings of fact of the court are sufficient to support the judgment rendered thereon. Ætna Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395; Seeberger v. Schlesinger, 152 U. S. 581, 14 Sup. Ct. 729, 38 L. Ed. 560; Webb v. National Bank of Republic, 146 Fed. 717, 77 C. C. A. 143; Chicago, R. I. & P. Ry. Co. v. Barrett, 190 Fed. 118, 111 C. C. A. 158; Guaranty Trust Co. v. Koehler, 195 Fed. 669, 115 C. C. A. 475. We have had some doubt as to whether the trial court can be said to have made special findings of fact within the meaning of the statute above quoted. The court neither itself framed special findings nor stated specifically that it made the findings of the referee its own.

[4] The reference as made, to the special master, so called, was proper, under the inherent power of the court, at least where, as here, it was with the consent of the parties. Hecker v. Fowler, 2 Wall. 123, 17 L. Ed. 759; Fenno v. Primrose, 119 Fed. 801, 56 C. C. A. 313. As was said in Shipman v. Straitsville Central Mining Co., 158 U. S. 356, 15 Sup. Ct. 886, 39 L. Ed. 1015:

"This case was referred by consent to * * * a so-called 'master commissioner,' as referee, with instructions to report the testimony, with the findings of fact and of law, to the court. The fact that no such officer as master commissioner is known to the law does not impair the validity of the reference, as it is perfectly competent for the court to refer a case to a private person. Hecker v. Fowler, 2 Wall. [1 Black] 123 [17 L. Ed. 45]."

"While the federal statute makes no provision for such reference in a law action, it is a recognized practice in the federal jurisdiction to make such reference by consent of parties; and, after the coming in of the referee's report, before judgment is entered upon the findings, either party may inter-

pose objections thereto in writing, and the court may, upon request of either party, re-refer the matter for further findings, or proceed to verdict and judgment on the record as the evidence and the law may direct. Hecker v. Fowler, 2 Wall. [1 Black] 123–129, 17 L. Ed. 759; St. L. Elec. Light & P. Co. v. Edison, etc. (C. C.) 64 Fed. 997–1004." Boatmen's Bank v. Trower Bros. Co. (C. C.) 171 Fed. 966; Fenno v. Primrose, 119 Fed. 801, 56 C. C. A. 313.

[5] And when special findings of fact, made by a master or referee to aid the court, are adopted by the court in such a manner as to show an intention to make such findings its own, such intention will be given effect by the appellate court, which will then consider the special findings, so adopted, as if they had been framed by the trial court. Chicago, Milwaukee & St. Paul Ry. Co. v. Clark, 178 U. S. 353, 20 Sup. Ct. 924, 44 L. Ed. 1099; Shipman v. Straitsville Central Mining Co., 158 U. S. 356, 15 Sup. Ct. 886, 39 L. Ed. 1015; Roberts v. Benjamin, 124 U. S. 64, 8 Sup. Ct. 393, 31 L. Ed. 334; Paine v. Central Vermont Ry. Co., 118 U. S. 152, 6 Sup. Ct. 1019, 30 L. Ed. 193; Shipman v. Ohio Coal Exchange, 70 Fed. 652, 17 C. C. A. 313 (Sixth Circuit); Board of Commissioners v. Sherwood, 64 Fed. 103, 11 C. C. A. 507. As was said in the recent case of Tiernan v. Chicago Life Ins. Co., 214 Fed. 238, at page 241, 131 C. C. A. 284:

"It was at one time questioned whether there could be a review in an appellate court of the United States where the facts were found by a referee (Boogher v. Insurance Co., 103 U. S. 90, 95, 26 L. Ed. 310), but it is now settled that when a jury has been waived in writing, and the findings of the referee have been confirmed by the trial court as reported, or as modified by it, the question whether the judgment rendered was warranted by the facts found will be reviewed by the appellate court as though the findings were wholly made by the trial court itself. C., M. & St. P. R. Co. v. Clark, 178 U. S. 353, 364, 20 Sup. Ct. 924, 44 L. Ed. 1099."

[6] In the present case we think that by overruling all the exceptions of both parties to the referee's report, confirming such report, and rendering judgment for the exact sum found by such referee to be due, the court indicated an intention to adopt as its own the findings of the referee. Being satisfied that such was the intention, we have decided to treat such findings as those of the District Court.

[7] We have also had difficulty in determining whether these findings of the referee were general or special within the meaning of the statute. The form in which they were framed by the referee is not to be commended. Instead of having a concise statement of the ultimate facts found, apart from recitals of evidence and conclusions of law, we are compelled, in order to discover such facts, to search through a voluminous report in and throughout which are mixed and interspersed findings of facts, conclusions of law, reference to evidence, and arguments of counsel. The following language is applicable here:

"It is not very easy to determine from this record whether the court's finding of facts was intended to be general or special. We call attention again to the very unsatisfactory practice that obtains in some of the Circuit Courts in the trial of cases before the court without a jury. The finding in such cases may be general, like the general verdict of a jury, or it may be special, like the special verdict of a jury. When the finding is special, the facts found should be stated as they would be in a special verdict of a jury. In stating the facts found, no reference whatever should be made to the evidence upon which those facts are found. Neither the evidence nor any discussion of it

should be injected into the ultimate finding of facts, upon which the court rests its judgment. The special finding of facts should be a clear cut statement of the ultimate facts, without importing into it the evidence, or the reasoning by which the court arrived at its finding." Minchen v. Hart, 72 Fed. 294, at page 295, 18 C. C. A. 570, at page 571.

"The special finding contemplated by the statute is a specific statement of those ultimate facts upon which the law must determine the rights of the parties. It corresponds to the special verdict of a jury, is equally specific and responsive to the issues, and is spread at large upon the record, as part thereof, in like manner as is such a verdict." United States v. Sioux City Stockyards Co., 167 Fed. 126, at page 127, 92 C. C. A. 578, at page 579.

[8] It is, however, apparent that the present record presents no disputed question of fact. Defendant, indeed, admits in its brief that "the facts are undisputed and necessarily sustain the finding of fact." We think, therefore, that the facts stated in the report of the referee, called therein special findings, and adopted by the court, can and should be treated as at least constituting an agreed statement of facts, and consequently equivalent to the special findings contemplated by the statute referred to. Mutual Life Insurance Co. v. Kelly, 114 Fed. 268, 52 C. C. A. 154; United States v. Cleage, 161 Fed. 85, 88 C. C. A. 249; Fellman v. Royal Life Insurance Co., 185 Fed. 689, 107 C. C. A. 637; Treat v. Farmers' Loan & Trust Co., 185 Fed. 760, 108 C. C. A. 98. As was said by Lurton, C. J., speaking for this court, in Kentucky Life & Accident Insurance Co. v. Hamilton, 63 Fed. 93, 11 C. C. A. 42:

"An agreed statement of facts, upon which a judgment is founded, will be taken, on appeal or writ of error, as the equivalent of a special finding of facts. Bond v. Dustin, 112 U. S. 607 [5 Sup. Ct. 296, 28 L. Ed. 835]; Supervisors v. Kennicott, 103 U. S. 554 [26 L. Ed. 486]; Lehnen v. Dickson, 148 U. S. 73 [13 Sup. Ct. 481, 37 L. Ed. 373]."

"There was * * * an agreement as to certain facts, which, though not technically such an agreed statement as is the equivalent of a special finding of facts, yet enables us to approach the consideration of the declaration of law with a certainty as to the facts upon which it was based." St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380.

"The findings are not to be construed with the strictness of special pleadings. It is sufficient if from them all, taken together with the pleadings, we can see enough upon a fair construction to justify the judgment of the court, notwithstanding their want of precision and the occasional intermixture of matters of fact and conclusions of law." O'Reilly v. Campbell, 116 U. S. 418, 6 Sup. Ct. 421, 29 L. Ed. 669.

In the words of the Supreme Court in Louisiana Mutual Insurance Co. v. Tweed, 74 U. S. (7 Wall.) 44, 19 L. Ed. 65, where counsel had agreed in the appellate court to certain portions of the opinion of the trial court as containing the material facts of the case:

"Inasmuch as they could have made such an agreement in the court below, we have concluded to act upon it here as if it had been so made."

[9] The only assignment of error specifically directed against the correctness of the judgment is the twentieth, which is as follows:

"The court erred in entering judgment for the plaintiffs, to which the defendant then and there excepted."

Such an assignment is insufficient to raise any question for review here. Deering Harvester Co. v. Kelly, 103 Fed. 261, 43 C. C. A. 225.

In the language of the court in Felker v. First National Bank, 196 Fed 200, at page 202, 116 C. C. A. 32, at page 34:

"The only other assignment is in effect that the court erred in rendering a judgment for the plaintiff. Unless we supplement this assignment by adding 'on the facts found,' it presents nothing for review by this court. Bell v. Union Pacific R. Co., 194 Fed. 366 [114 C. C. A. 326] just decided. Assuming, therefore, that the assignment meant to challenge the judgment on the statutory ground that the facts found were insufficient to support it, it is entirely without merit, and cannot be sustained."

But several of the assignments of error raise questions which, in effect, involve the sufficiency of the facts found to support the judgment, and we have therefore concluded to consider such assignments as if they had specifically questioned such sufficiency, and we proceed to consider the questions thus presented.

[10] 1. Was bond 1318 renewed by bond 2071?

This suit involves two credit insurance policies, called bonds, issued by defendant to plaintiffs, the first bond, No. 1318, by its terms indemnifying them against loss of accounts due them from customers for goods shipped between January 1, 1903, and December 31, 1903, and the second bond, No. 2071, furnishing such indemnity on shipments between October 1, 1903, and September 30, 1904; both bonds being subject to certain terms and conditions hereinafter referred to. Bond 1318 contained the following clause:

"Outstandings Covered under Renewal Bond.

"Seventh. If this bond is renewed on or before the date of termination thereof by the issuance of a new bond, the losses occurring during the term of the renewal on goods shipped during the term of this bond shall be included in the calculation of losses under said renewal, the same as if the goods had been shipped during the term of such renewal bond."

On December 4, 1903, and therefore before the date of the termination of bond 1318, bond 2071 was issued, and by its terms, as stated, covered losses on shipments between October 1, 1903, and September, 30, 1904. It also contained the following clause:

"In consideration of issuing the attached bond, it is agreed and understood that losses occurring on goods shipped on and after October 1, 1903, shall not be included under bond 1318, but under the attached bond, subject to the terms and conditions thereof."

This was its only reference to the previous bond, from which it differed in several of its provisions.

Certain losses to plaintiffs occurred during the term of the second bond on shipments made prior to the commencement of such term and during the term of the first bond. And the question is raised whether bond 1318 was renewed by bond 2071, within the meaning of the clause quoted, so that losses occurring during the term of the latter bond on shipments made during the term of the former bond can be included in the calculation of losses under said latter bond. It is urged that because it is not recited in the latter bond that it is a renewal of the earlier one, and because there is no direct evidence that the parties agreed that it should be so considered, therefore it is not

such a renewal within the meaning of the first bond, and the losses last mentioned are not protected by it.

We are unable to agree with such contention. We think that by the clause quoted the parties intended to, and did, agree that if, on or before the expiration of this first bond, defendant should issue to plaintiffs a new bond, such clause should become operative. It is unnecessary to determine whether the second bond is itself technically a renewal bond, because it is clear that the parties themselves have stipulated that such renewal should be effected "by the issuance of a new bond." It is obvious that these parties were not interested in, if they understood, the technical legal meaning of the term "renewal." What they were interested in, and unquestionably understood, was the protection to be extended to losses occurring after, on shipments made before, the termination of the old bond, "by the issuance of a new bond," on or before such termination. And when such new bond was so issued the "outstandings" referred to were thereby "covered."

[11] 2. Are the losses occurring during the term of the renewal bond, on shipments made during the term of the original bond, the losses contemplated and defined by the original bond?

The kind of losses on shipments made during the period of the second bond recoverable thereunder differed materially from the kind of losses recoverable under the conditions of the first bond. Thus, the only losses against which plaintiffs were indemnified by the second bond were those "sustained on claims against debtors by or against whom, between the dates of the execution and termination of this bond, judicial proceedings of any kind have been taken, establishing such debtors' insolvency," while the first bond gave indemnity against losses arising on claims against the following debtors:

"A debtor for an amount not exceeding $250, where the preliminary notice of loss has attached to it a report from the designated mercantile agency, or from some collection agency or attorney practicing in the place where the debtor did business, that the claim against such debtor is uncollectible through legal proceedings; * * * a debtor who has effected a compromise with his creditors; * * * a debtor by or against whom a petition to be declared a bankrupt or insolvent has been filed under the federal bankruptcy law or under some insolvency or assignment law of any of the United States or any territory thereof; * * * a debtor against whom an execution in favor of the indemnified or some other creditor has been returned unsatisfied," and losses arising under certain other circumstances mentioned in said bond.

It is contended by defendant that, if the first bond be considered as renewed by the second, so that losses on shipments during the term of the former, occurring during the term of the latter bond, may be included in the calculation of the losses under said latter bond, only such losses can be so included as are within the class of losses specifically covered by such bond when occurring on shipments made during its term.

We think that to so hold would require a forced and unnatural construction of the clause in question. It will be observed that by this clause it was agreed that "the losses occurring" during the term of the renewal, on shipments made during the term of the original policy, should be included in the calculation of losses under such renewal. In

the absence of any express definition of the word, we think it evident that by "the losses" was meant the losses against which plaintiffs were then being insured. And the basis for calculating these losses was then being fixed, in the language of the policy already quoted.

If the parties had desired to make the provability of such losses subject to the terms and conditions of the renewal policy, such an intention could easily have been expressed in appropriate language, as was done by the insertion in the second bond of the following provision, above referred to:

"In consideration of issuing the attached bond, it is agreed and understood that losses occurring on goods shipped on and after October 1, 1903, shall not be included under bond No. 1318, but under the attached bond, subject to the terms and conditions thereof."

Even if the language of clause 7 alone is not sufficient to require the payment under the renewal policy of the "losses" as defined in 1318, incurred during its term upon goods shipped before October 1, 1903, we think also that the language just quoted is a clear recognition by the parties that, except as expressly provided thereby, the losses mentioned in clause 7 are those "included under bond No. 1318," and not "under the attached bond, subject to the terms and conditions thereof."

Although counsel have not cited, and we have been unable to find, a case in which the facts were identical with those involved here, the same general situation was presented in two cases already decided by this court.

The case of American Credit Indemnity Co. v. Athens Woolen Mills, 92 Fed. 581, 34 C. C. A. 161, involved two credit insurance bonds quite similar to those involved here. By clause 8 of the first bond it was provided that:

"No loss can be proven after the expiration, provided, however, that in case this bond is renewed, and the premium on such renewal is paid at or before the expiration of this bond, loss resulting after such date of expiration, on shipments made during the term of this bond, may be proven during the term of the renewal bond next immediately succeeding."

Before the expiration of the bond complainant renewed it, paying the required premium, and received bond No. 2443 in renewal. In nearly all respects this bond was like the old. Its eighth condition was:

"In case this bond is renewed, and the premium on such renewal is paid at or before the expiration of this bond, loss resulting after said date of expiration, upon shipments made during the term of the bond, may be proven under such renewal bond, in accordance with the terms and conditions of such renewal. In case this bond is a renewal, and the premium has been paid at or before the expiration of the preceding bond, losses occurring during the term of this bond, on shipments made during the terms of said preceding bond, may be proven hereunder."

It was urged by the insurer that only such losses were carried over from the old to the new bond as were within the terms and conditions of the latter bond. This court, speaking by Circuit Judge Taft, said:

"The question before us is one of construction. Is the loss guaranteed against under clause 8 of bond 1540, in case of a renewal, loss resulting from insolvency, as defined in that bond, or as defined in the renewal bond, 2443? If the former, then the judgment is supported by the averments of the bill; if

the latter, then, because the affairs of the debtor firm were in the hands of a receiver, a judgment, execution, and nulla bona return are not the test of insolvency, and the plaintiff's case is not made out. The exception as to the receivership was a new provision of bond No. 2443. Clause 8 of No. 1540 was of a somewhat illusory character. It did not become operative and binding until renewal, and it was of course, possible for the insurer to modify the effect of clause 8 by the terms of the very renewal upon which alone it became his contractual obligation. These contracts of indemnity are merely contracts of insurance, carefully framed, to limit as narrowly as possible the liability of the insurer, and doubtful expressions in them are to be construed favorably to the insured. Supreme Council Catholic Knights of America v. Fidelity & Casualty Co., 11 C. C. A. 96, 63 Fed. 48; Guarantee Co. of North America v. Mechanic's Sav. Bank & Trust Co., 26 C. C. A. 146, 80 Fed. 766. Taking clause 8 of bond No. 1540 alone, it cannot be doubted that 'the loss resulting after such date of expiration on shipments made during the term of this bond,' which was to be proven during the term of the renewal bond, was intended to be the same kind of loss as that for which the bond was given, to wit, a loss resulting from insolvency, as in bond No. 1540 defined. This conclusion is enforced by the language of clause 11 in bond No. 1540, in which it is agreed that insolvency shall be return of judgment executions unsatisfied during the term of bond or the renewal thereof aforesaid. Does clause 8 of bond No. 2443 indicate an intention to change the character of the loss upon goods sold during the life of the previous bond for which the insurer should become liable? The material words of that clause are: 'In case this bond is a renewal, * * * losses occurring during the term of this bond on shipments made during the term of said preceding bond may be proved hereunder.' Does proof, under the renewal bond, require that the insolvency shall be established according to the definition of that bond? Standing alone, it may be conceded that this would be the natural meaning of the words; but we are to construe this clause with clauses 8 and 11 of bond No. 1540. We are to consider that by that clause it was clearly intended to extend the benefit of the old bond to cover sales of goods made under that bond, though losses thereon did not accrue during its life; and we ought not to defeat that intention and just expectation of the assured, unless the words of the renewal bond necessarily require it. Do they require it? We think not. In the light of the circumstances and the necessity for reconciling the clauses of the two bonds, the words of clause 8 of bond No. 2443 may be reasonably construed to mean merely that the formal proof of loss is to be made under the renewal bond and during its life, while clauses Nos. 8 and 11 of bond No. 1540 shall be given effect by holding that the fact of the loss is to be settled by the terms of the old bond."

In American Credit Indemnity Co. v. Champion Coated Paper Co., 103 Fed. 609, 43 C. C. A. 340, the same contention was made in reference to somewhat different provisions contained in bonds similar to those in the instant case. Lurton, C. J., speaking for this court, said:

"The initial loss and single debtor liability of the two bonds are irreconcilable, if we construe the conditions of the renewal bond as applicable to losses resulting from sales under the first bond. They are not so, if we limit the terms and conditions in respect of the initial loss and single debtor liability, found in the new bond, to sales occurring during its period. This is the most reasonable interpretation, and accords most nearly with the justice of the matter. In the case of American Credit Indemnity Co. v. Athens Woolen Mills, a cause decided by this court, and reported in 34 C. C. A. 161. 92 Fed. 581, we found a difficulty of the same general character arising out of a doubt as to whether the definition of insolvency found in a renewal policy applied to a loss which was provable under the renewal bond, though it arose from sales made during the currency of the preceding bond. * * * In the same case we held bonds of this character to be essentially insurance contracts, and that doubtful and ambiguous expressions were to be construed most favorably to the insured. Applying this rule, we have no hesitation in holding that the provisions which determine the amount * * * of the single

debtor liability applicable to claims resulting from sales during the period of the preceding bond are those found in the preceding bond."

We think that the losses on goods shipped during the period of the first bond, and before October 1, 1903, but occurring during the period of the second bond, which may be included in the calculation of the losses under the second bond, are not limited to the class of losses covered by said bond, but are the losses coming within the classes covered by the first bond.

[12] 3. Should the amount of sales under the first bond be added to the amount of sales under the second bond, to determine the amount of initial loss to be borne by the insured?

The renewal bond contained the following provision:

"If between the date of the execution of this bond and the 30th day of September, 1904, both dates inclusive, on goods usually dealt in and at the time of shipment solely owned by the indemnified, shipped since the 1st day of October, 1903, the indemnified shall sustain actual losses in excess of $5,000 hereinafter called the 'initial loss,' on sales and shipments not exceeding $450,000, or, if such sales and shipments as aforesaid exceed such sum, a proportionally increased initial loss, the company agrees to pay such excess loss."

The first bond contained the same clause, excepting as to the dates mentioned. The contention is made by defendant that, if the losses on shipments during the first bond are carried over into the renewal bond, the amount of sales and shipments during the same period should also be carried over and added to the amount of sales and shipments made during the term of the latter bond; that, if this was done, said last-mentioned amount would exceed the maximum fixed, $450,000; and that consequently the initial loss to be borne by the insured should be proportionately increased above $5,000. It is a sufficient answer to this contention to point out that, while the parties might have made an agreement to that effect, they have not done so, and we cannot add to the contract which they have seen fit to make. By that contract it was specifically provided that:

"The losses occurring during the term of the renewal on goods shipped during the term of this bond shall be included in the calculation of losses under said renewal, the same as if the goods had been shipped during the term of such renewal bond."

No provision having been made for also carrying over the sales and shipments, we do not feel warranted in speculating on the question whether such provision should have been made. It should also be borne in mind that each bond, by its express terms, insured certain losses, in excess of an initial loss, on shipments made during a certain period, which period was different in each bond. And the amount of the initial loss to be borne by the insured under either bond, on the losses occurring during the period of such bond, depended, by the terms thereof, upon the amount of the shipments made during such period. Thus, the amount of the initial loss on the losses occurring during the period of the first bond, on shipments made during such period, depended upon the total amount of such shipments. Consequently, if those shipments, or any part thereof, were carried over and used in computing the total amount of shipments under the second bond, the result would be that,

to that extent, the same shipments would be available twice as a basis for determining one initial loss, and the total loss to be borne by the insured would be proportionally increased beyond the sum agreed upon. We think that the contention of defendant cannot be sustained.

4. What has been said is also applicable to the contention that only losses, if any, in excess of $5,000 on shipments made during the first bond, are covered by the renewal clause. This clause, however, specifically refers to losses, and not excess losses, and as the parties used plain language to express their agreement, we cannot substitute therefor other language of our own, which would alter the meaning of such agreement.

Moreover, as already pointed out, to adopt the contention of defendant in this regard would result in increasing the initial loss beyond the amount expressly agreed upon. The effect, in fact, would be that the insured would be obligated to bear one initial loss on losses on shipments made during the period of the first bond and occurring during such period, another similar initial loss on losses on the same shipments but occurring during the period of the second bond, and a third initial loss of the same amount on losses on shipments made during the period of the second bond and occurring during that period. That such a result, so inconsistent with the express provisions of the bonds governing the initial loss, was intended to be effected by the renewal clause in question, is hardly conceivable. Certainly no such intent was expressed by the language of such clause. While the other provisions refer to "losses in excess of" the initial loss, and to "excess loss," this clause mentions merely "the losses" occurring after, on shipments made before, the term of the first bond. We think that by the various provisions and clauses to which reference has been made the parties agreed: First, that defendants should indemnify plaintiffs against the losses defined by the first bond and occurring, in excess of the initial loss therein provided, on shipments made during such term, the total amount of the shipments made during such term being the basis for determining the amount of such initial loss; second, that the losses defined by the first bond, on shipments made during the term thereof (and therefore included in the basis for computing the initial loss thereunder), but occurring during the term of the second bond, should be included in the amount of the losses defined by, and occurring during the term of, such second bond on shipments made during its term; and, third, that the defendant should indemnify the plaintiffs against the losses defined by the second bond and occurring, in excess of the initial loss therein provided, during the term thereof on shipments made during such latter term, the amount of such initial loss depending, and depending only, upon the amount of shipments actually made during such latter term, but the amount of the losses, that is, the gross losses, including not only the losses occurring on such shipments, but also the losses occurring during such latter term on the shipments made during the term of the first bond (which shipments had been already used, as shown, in computing the amount of the initial loss under the first bond). This contention, therefore, must be overruled.

[13] 5. Should the shipments of goods which were returned by customers to the insured have been deducted from the amount of sales

and shipments, in determining whether the total amount of such sales and shipments exceeded the maximum fixed in each policy?

We think that, when goods shipped have been returned and accepted by the insured, no sale is consummated within the meaning of this policy. It does not appear, nor is it claimed, that any of the goods so returned were not accepted by the insured. It must therefore be assumed that such goods were shipped, but not sold, or else that any sales thereof were rescinded. In either event, no risk thereon was assumed by the insurer, and we think that the court did not err in refusing to include these shipments among the total amount of sales and shipments, in determining whether the maximum fixed had been exceeded.

[14] 6. Were plaintiffs insured against losses occurring between October 1, 1903, and December 4, 1903, the date of the execution of the renewal bond?

This bond contained the following clause:

"If between the date of the execution of this bond and September 30, 1904, * * * on goods * * * shipped since the 1st day of October, 1903, the indemnified shall sustain actual losses in excess of $5,000, * * * provided: * * * (b) That such losses shall have been sustained on claims against debtors by or against whom between the dates of the execution and termination of this bond, judicial proceedings of any kind have been taken, establishing such debtor's insolvency."

The losses on three accounts, known as the Mandelstamen, Gammon, and Trigg claims, occurred between October 1, 1903, and such date of execution, which was December 4, 1903, and defendant contends that by reason of the language just quoted these losses were not covered by such bond. By reference to the schedules attached to the master's report we find that all the Gammon and Trigg shipments, and most of the Mandelstamen shipments, on which such losses occurred, were made before October 1, 1903. These losses, therefore, were covered by the renewal clause already discussed, and defendant's contention, if tenable, is inapplicable thereto. This leaves only a small part of the Mandelstamen shipments open to the objection last referred to. If the provisions here invoked by defendant were the only ones in the last bond relating to this question, the contention made might not be without some force. The same bond, however, contains the following language, already quoted in another connection:

"In consideration of issuing the attached bond, it is agreed and understood that losses occurring on goods shipped on and after October 1, 1903, shall not be included under bond No. 1318, but under the attached bond, subject to the terms and conditions thereof."

It is evident that the parties intended that the renewal bond should cover losses on goods shipped after October 1, 1903, and that the reference to the "date of the execution" of such bond was merely a printed clause designed to apply if the bond had taken effect at the date of its execution, instead of, as here, prior thereto. That the court committed no error in so holding is manifest from the rule of construction, applicable to such a case, to which reference is hereinafter made.

7. Among the losses insured by the first policy were losses—

"against a debtor for an amount not exceeding $250 where the preliminary notice of loss has attached to it a report from the designated mercantile agency, or from some collection agency or attorney practicing in the place

where the debtor did business, that the claim against such debtor is uncollectible through legal proceedings."

Defendant objects to the allowance of any part of the loss on the account of Middleton, Chandler & Co. under this clause, because said account exceeded $250, contending that said clause covers only a loss on an account not exceeding that sum, and no portion of an account which is in excess of the sum named.

It is unnecessary to construe this provision, because a reference to the findings and to certain exhibits mentioned therein discloses the fact that a petition in bankruptcy had been filed against the firm in question and defendant had duly filed a proof of claim therein. This loss was therefore insured, in any event, under the clause covering losses—

"against a debtor by or against whom a petition to be declared a bankrupt or insolvent has been filed under the federal bankruptcy law or under some insolvency or assignment law of any of the United States or any territory thereof."

[15] 8. Defendant assigns error on the allowance of the losses on the so-called Strauss and Henderson claims under the first bond, "for the reason that the record does not show that any event transpired during the term of either bond No. 1318 or No. 2071 which rendered said claims a provable claim under either of said bonds."

With respect to the Strauss account, the findings and the evidence referred to therein show that plaintiffs duly sent defendant preliminary notice of loss, "because the debtor has been adjudged bankrupt according to the advices received from his brother," and that defendant replied by informing plaintiffs that:

"We have advices from our local attorney to the effect that this party was closed out under execution and nothing can be made out of him."

The schedule attached to, and made a part of, the findings, shows that said debtor was "closed out under execution." The loss was therefore covered by the policy, either as a loss on a debtor who had become a bankrupt, as a loss on a debtor duly reported uncollectible, or as a loss on "a debtor whose stock in trade has been sold in judicial proceedings." That formal notice of such facts was not specifically given in the preliminary proof of loss is immaterial, as defendant had prompt and sufficient knowledge of such threatened loss, and did not dispute liability on that ground. American Credit Indemnity Co. v. Wood, 73 Fed. 81, 19 C. C. A. 264; American Credit Indemnity Co. v. Carrollton Furniture Mfg. Co., 95 Fed. 111, 36 C. C. A. 671; Sloman v. Mercantile Credit Guarantee Co., 112 Mich. 258, 70 N. W. 886.

Regarding the Henderson account, it appears to be undisputed that a judgment was obtained thereon, that no property was found upon which execution could be levied, and that attorneys for defendant returned said claim to it uncollected. The loss was manifestly covered by the first bond, both as a loss on a debtor against whom an execution had been returned unsatisfied, and as a loss on an account reported by an attorney as uncollectible.

[16] It is, of course, well settled that credit insurance bonds, or policies, as they really are, like other insurance policies, if ambiguous in their language, are to be construed strictly against the insurer, by

220 F.—27

whom they have been framed. American Credit Indemnity Co. v. Champion Coated Paper Co., supra; Tebbetts v. Mercantile Credit Guarantee Co., 73 Fed. 95, 19 C. C. A. 281; American Credit Indemnity Co. v. Wood, 73 Fed. 81, 19 C. C. A. 264. As was said in the case last cited:

"The bond, with its numerous conditions, being an instrument prepared by the insurer, we must apply to its construction the rule which was applied by this court in Guarantee Co. v. Wood, 15, C. C. A. 563, 68 Fed. 529: 'If the particular clause requiring interpretation cannot be brought into harmony with the rest of the contract, and the instrument, considered as a whole, is ambiguous touching the precise loss which the policy covers, that meaning is to be given to it which is most favorable to the insured.'"

And the following language of the Supreme Court is applicable to our construction of these bonds:

"If the latter construction of the bond be not clearly right, it cannot be said to be inconsistent with its provisions. And it would be going very far to say that the construction given to it by the company was so clearly right that a different construction would be unreasonable or entirely inadmissible. We have, then, a contract so drawn as to leave room for two constructions of its provisions, either of which, it may be conceded, is reasonable, one favorable to the company, and the other favorable to the bank, and most likely to subserve the purposes for which the bond was given. In such a case the terms used must be interpreted most strongly against the party who prepared the bond and delivered it to the party for whose protection it was executed." American Surety Co. v. Pauly, 170 U. S. 160, at page 168, 18 Sup. Ct. 563, at page 566 (42 L. Ed. 987).

[17] Plaintiffs complain of certain rulings of the court; but, as they did not appeal from the judgment, they cannot in this court go beyond supporting such judgment and opposing every assignment of error. Landram v. Jordan, 203 U. S. 56, 27 Sup. Ct. 17, 51 L. Ed. 88; Southern Pine Lumber Co. v. Ward, 208 U. S. 126, 28 Sup. Ct. 239, 52 L. Ed. 420; Texas Co. v. Central Fuel Oil Co. et al., 194 Fed. 1, 114 C. C. A. 21; Swager v. Smith, 194 Fed. 762, 114 C. C. A. 482; O'Neil v. Wolcott Mining Co., 174 Fed. 527, 98 C. C. A. 309, 27 L. R. A. (N. S.) 200.

We have carefully considered all the assignments of error raising questions which in effect involve the sufficiency of the facts found to support the judgment. No other questions have been properly presented for review. Nor do we intend to hold that without exceptions properly taken and directed to specific parts of a controversy of this complex character, or at least assignments of error specifically and clearly directed at the sufficiency of particular findings of fact to support the judgment rendered, this court will consider the details of the controversy, searching the record as has been done in this case; but we have thought that course advisable here under the unusual conditions shown by this record.

As we find no error, the judgment is affirmed.

### On Application for Rehearing.

PER CURIAM. We are satisfied that whatever doubts exist as to the true mutual construction of the two contracts, as urged originally and as again presented by the rehearing application, are properly to be solved in favor of the insured by virtue of the rule pointed out in the opinion. The application for rehearing is denied.